**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| In re: | No. 2:23-BK-52859 |
| S&G Hospitality, Inc., *et al.*,[1] <br> Debtors. | Chapter 11 <br> Judge Nami Khorrami |
| Lancaster Hospitality, LLC, <br>     Plaintiff. <br><br> v. <br><br> Hilton Franchise LLC, <br>     Defendant. | Adv. Pro. 24-ap-02024 |

**PLAINTIFF LANCASTER HOSPITALITY, LLC'S MOTION FOR
PARTIAL SUMMARY JUDGMENT WITH RESPECT TO ITS CLAIM FOR
DECLARATORY JUDGMENT THAT SECTION 365(c) OF THE BANKRUPTCY CODE
USES AN ACTUAL TEST FOR THE ASSUMPTION OF EXECUTORY CONTRACTS**

    Plaintiff Lancaster Hospitality LLC hereby moves for partial summary judgment with respect to the demand in its complaint seeking a declaratory judgment that the "actual" test should be used for determining when an executory contract can be assumed, but not assigned, under section 365 of the Bankruptcy Code.

---

[1] The S&G Debtors and the last four digits of their federal tax identification numbers are as follows: S&G Hospitality, Inc. (4566), Buckeye Lodging, LLC (6047), Lancaster Hospitality, LLC (8830), and Sunburst Hotels, LLC (0374).

{907669-3}

Dated: May 17, 2024

Respectfully submitted,

*/s/ David A. Beck*
David A. Beck (0072868)
CARPENTER LIPPS LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: beck@carpenterlipps.com

*COUNSEL FOR S&G DEBTORS
INCLUDING PLAINTIFF LANCASTER
HOSPITALITY, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| In re: <br><br> S&G Hospitality, Inc., *et al.*,[1] <br> Debtors. | No. 2:23-BK-52859 <br><br> Chapter 11 <br><br> Judge Nami Khorrami |
| Lancaster Hospitality, LLC, <br> Plaintiff. <br><br> v. <br><br> Hilton Franchise LLC, <br> Defendant. | Adv. Pro. 24-ap-02024 |

**PLAINTIFF LANCASTER HOSPITALITY, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT WITH RESPECT TO ITS CLAIM FOR**
**DECLARATORY JUDGMENT THAT SECTION 365(c) OF THE BANKRUPTCY CODE**
**USES AN ACTUAL TEST FOR THE ASSUMPTION OF EXECUTORY CONTRACTS**

Plaintiff Lancaster Hospitality, LLC's ("**Lancaster**") complaint seeks two different declarations related to its franchise agreement (the "**Franchise Agreement**") with defendant Hilton Franchise LLC ("**Hilton**"). The first is a general declaration that section 11 of title 11 of the United States Code (the "**Bankruptcy Code**") applies an actual test allowing for the assumption, but not the assignment, of executory contracts irrespective of any restrictions in applicable law on the ability to delegate performance under the contract. This request for declaratory relief is a clearly legal question which does not require the determination of any disputed issues of material fact and is thus ripe for decision by this Court on summary judgment.[2]

---

[1] The S&G debtors and the last four digits of their federal tax identification numbers are as follows: S&G Hospitality, Inc. (4566), Buckeye Lodging, LLC (6047), Lancaster Hospitality, LLC (8830), and Sunburst Hotels, LLC (0374) (collectively, the "**Debtors**").

[2] The second declaration sought by the Motion relates to the redacted portions of the Complaint. Lancaster has a pending motion seeking leave to file the unredacted form under seal. It is thus not ripe for decision at the current time, but may be the subject of a future summary judgment motion in this case.

{907669-3}

I.     **Introduction**

Executory contracts or unexpired leases are often extremely valuable to chapter 11 debtors. Section 365 of the Bankruptcy Code recognizes this by permitting debtors to broadly assume executory contracts and continue to enjoy the benefits of these contracts when appropriate. Section 365(e)(1) of the Bankruptcy Code recognizes this by broadly invalidating ipso facto clauses in executory contracts triggered by the insolvency or financial condition of the debtor, the commencement of a bankruptcy case, or the prepetition appointment of a trustee or custodian. Similarly, section 365(f) of the Bankruptcy Code generally invalidates both anti-assignment provisions in executory contracts and such provisions contained in otherwise applicable non-bankruptcy law. Section 365(c) of the Bankruptcy Code is supposed to provide a very limited exception to section 365(f)'s general invalidation of anti-assignment provisions and law.

However, Courts have disagreed on the scope of section 365(c)'s exception. Some decisions have creatively reinterpreted it to eliminate its invalidation of provisions in applicable law. These decisions bar not only an ***assumption and assignment*** of an executory contract by a debtor-in-possession to a third-party, but also the **assumption** without an assignment by the debtor-in-possessions of an executory contract without the consent of the contract counterparty. This provides the non-debtor counterparty to the contract a veto on the debtor's continued usage of the executory contract and thus the ability to renegotiate the executory contract merely because of the bankruptcy filing. In the *In re Welcome Group 2, LLC, et al.*, No. 2:23-bk-53043 (S.D. Ohio), Hilton has filed both a lift stay motion (Docket No. 166) (the "**Lift Stay Motion**") and a brief "regarding application of the hypothetical test to the assumption of franchise agreements" (Docket No. 226) (the "**Rejection Test Brief**"). The latter argues for the application of a "hypothetical test," which both acts as if an assignment is being proposed in cases where it is not, and advocates for an unduly broad reading of applicable law which would trigger the application of section 365(c). Hilton will doubtless assert the same in this case which would provide it the opportunity to renegotiate Lancaster's Franchise Agreement with it (or even veto its assumption).

The correct view is that section 365(c) is a limited exception designed to protect a non-

debtor party when certain kinds of executory contracts are being conveyed to a third-party and the identity of who is performing the contract is of special importance. This test, also known as the "actual test" looks at what is ***actually*** being requested by the debtor to determine if otherwise applicable law should be read to apply in spite of section 365(e) and (f)'s broad preemption of such laws. This position is in accordance with a better interpretation of the statutory language, the legislative history, and public policy. Not surprisingly, the previous rulings by other Bankruptcy Courts in Ohio, and the better reasoned opinions elsewhere have adopted this view. This Court should follow those cases and issue a declaratory judgment that the "actual test" applies to any attempt by Lancaster to assume the Franchise Agreement in its Bankruptcy Case.

II.     **Statement of Material Facts**

1.      Hilton and Lancaster are parties to a Franchise Agreement dated as of February 7, 2015. *See* Complaint ¶ 11 (ECF # 1); Attachment to Proof of Claim of Hilton Franchise Holding, LLC, *In re: S&G Hospitality, Inc., et al.*, No. 2:23-bk-56262 ("Hilton Proof of Claim") ¶ 2 (Bankr. S.D. Ohio Oct. 31, 2023), Claim 4-1 Part 2.

2.      The Franchise Agreement allows Lancaster to use the Hampton Inn trademark and access Hilton's reservation system in connection with Hilton's operation of the Hampton Inn-Lancaster at 2041 Schorrway Drive NW, Lancaster, Ohio 43130. *See* Complaint ¶ 9 (ECF # 1); Hilton Proof of Claim ¶ 2. In return, Lancaster is obligated to make certain payments to Hilton. *See* Complaint ¶ 11 (ECF # 1); Hilton Proof of Claim ¶ 3.

3.      On August 18, 2024, Lancaster filed its chapter 11 petition. *See* Chapter 11 Voluntary Petition, *In re: S&G Hospitality, Inc., et al.*, No. 2:23-bk-52862 (Bankr. S.D. Ohio Aug. 18, 2023), ECF No. 1. Lancaster is operating as a debtor-in-possession and no trustee has been appointed in these chapter 11 cases.

4.      On August 28, 2023, Hilton's affiliate or predecessor in interest Hampton Inns Franchise LLC filed a notice of appearance and demand for service of papers. Request for Notice, *In re: S&G Hospitality, Inc., et al.*, No. 2:23-bk-52862 (Bankr. S.D. Ohio Aug. 28, 2023), ECF No. 39. The Franchise Agreement was identified as an executory contract on Lancaster's

{907669-3}                                    3

schedules, which were filed on September 13, 2023. *See* Schedule G at 2.5, *In re: Lancaster Hospitality LLC*, No. 2:23-bk- 52862 (Bankr. S.D. Ohio Sept. 13, 2023), ECF No. 17.

5. On October 31, 2023, Hilton filed a proof of claim in Lancaster's bankruptcy identifying itself as the successor to Hampton Inns Franchise LLC. *See* Hilton Proof of Claim at 1.

6. On September 1, 2023, Welcome Group 2, LLC, Hilliard Hotels, LLC, and Dayton Hotels, LLC filed chapter 11 petitions with this Court. *See* Emergency Motion for Joint Administration, *In re: Welcome Grp. 2 LLC*, No. 2:23-bk-53043 (Bankr. S.D. Ohio Sept. 6, 2023), ECF No. 14. Their bankruptcy cases are being jointly administered as Case 2:23-bk-53043. *See* Order Directing Joint Administration of Chapter 11 Cases, *In re: Welcome Grp. 2 LLC*, No. 2:23-bk-53043 (Bankr. S.D. Ohio Sept. 14, 2023), ECF No. 56. Hilliard Hotels, LLC ("**Hilliard**") owns a hotel in Sidney Ohio. *See* Certification of Shruti Buckley at ¶ 10, *In re: Welcome Grp. 2 LLC*, No. 2:23-bk-53043 (Bankr. S.D. Ohio Feb. 28, 2024), ECF No. 166-1. Hilton is party to a franchise agreement with Hilliard to operate a hotel in Sidney, Ohio as a Hampton Inn. *See id.* at ¶ 9. This includes the ability to use the Hampton Inn trademarks and reservation system. *See id.* at ¶¶ 2-3, 5.

7. On February 28, 2024, Hilton filed the Lift Stay Motion requesting relief from the automatic stay in the *Welcome Group 2* bankruptcy so that it can terminate its franchise agreement with Hilliard which allows Hilliard to operate the hotel in Sidney, Ohio as a Hampton Inn. *See* Motion for Relief from Stay, *In re: Welcome Grp. 2*, No. 2:23-bk-53043 (Bankr. S.D. Ohio Feb. 28, 2024), ECF No. 166. In Section IV.B of the memorandum of points in support of the Lift Stay Motion, Hilton asserted that its franchise agreement with Hilliard could not be assumed without Hilton's consent because section 365(c)(1) of the Bankruptcy Code requires application of a hypothetical test under which a debtor-in-possession could not assume an executory contract if applicable law barred the assignment of the contract outside of bankruptcy. *See Id.* at 8-11. Hilton asserted that the applicable law preventing the assignment of the franchise agreement was the Lanham's Act provisions regarding the assignment of trade marks. *See id.* at 11-12. On May 13,

2024, Hilliard filed the Rejection Test Brief asserting that the hypothetical test generally applied under section 365(c) of the Bankruptcy Code so that if applicable nonbankruptcy law prohibited the assignment of an executory contract, the debtor in possession could not even assume the executory contract. *See* Document Brief of Hilton Franchising Holding LLC, *In re: Welcome Grp. LLC*, No. 2:23-bk-53043 (Bankr. S.D. Ohio May 13, 2024), ECF No. 226. Despite the Rejection Test Brief having been filed after the filing of this adversary proceeding, in neither proceeding has Hilton ever disclaimed the applicability of the hypothetical test to any attempt by Lancaster to assume, but not assign, its Franchise Agreement.

### III.   Argument

#### A.   *Standard for Summary Judgment*

Because this is an adversary proceeding, it is subject to the rules in Party VII of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Among these rules, is Bankruptcy Rule 7056's importation of Rule 56 of the Federal Rules of Civil Procedure's standard for granting summary judgment. Summary judgment is required if the movant establishes that there is no genuine dispute of material fact and that the law entitles it to judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes of material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory judgment relief is appropriate concerning the extent of obligations under a contract. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 395-402 (6th Cir. 2019) (finding it appropriate to issue declaratory judgment about whether insurance policy required insurer to defend a different action). Bankruptcy courts are allowed to issue declaratory judgments under this statute. *See, e.g., Central West Virginia Energy Co. v. Wheeling-Pittsburgh Steel Co.*, 245 Fed. Appx. 415, 416 (6th Cir. 2007) (affirming bankruptcy court order granting declaratory judgment regarding assignability of

contract); *In re Murray Energy Holdings Co.*, 634 B.R. 951, 974-75 (Bankr. S.D. Ohio 2021) (finding bankruptcy court had jurisdiction to issue declaratory judgment regarding interpretation of provision of credit agreement).

### B. The Bankruptcy Code Broadly Protects Chapter 11 Debtors' Interests in Executory Contracts Including the Power to Assume These Contracts

Section 365(a) sets forth a general rule that except for specific exceptions articulated in the Bankruptcy Code, a debtor "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "This language by its terms includes all executory contracts except those expressly exempted …" *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 (1984). In furtherance of this general rule providing broad latitude to a debtor to assume or reject executory contracts, the Bankruptcy Code contains a number of provisions designed to protect a chapter 11 debtor's rights in executory contracts:

- Section 365(e)(1) of the Bankruptcy Code provides a general rule that, notwithstanding contrary provisions in executory contracts or unexpired leases, an executory contract or unexpired lease of the debtor "may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case" because of an "ipso facto" clause or other provisions;

- Section 365(f)(1) of the Bankruptcy Code provides a general rule that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection[;]" and

- Section 541 of the Bankruptcy Code provides that as an general rule, "an interest of the debtor in property becomes property of the estate … notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankrupcy law— (A) that restricts or conditions transfer of such interest by the debtor; or (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property."

These provisions referenced a reversal of the pre-1978 practice where contractual ipso facto and

anti-assignment provisions in contracts or applicable nonbankruptcy law were enforceable. *See Summit Inv. and Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995). This was because of Congress's recognition that the enforceability of such provisions "frequently hampers rehabilitation efforts by depriving the chapter 11 estate of valuable property interests at the very time the debtor and the estate need them most." *See id. (citing* S. Rep. No. 989, 95th Cong. 2d Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845).

### C. Section 365(c) of the Bankruptcy Code Does Not Prohibit Lancaster's Assumption of the Franchise Agreement

In both the Lift Stay Motion and the Rejection Test Brief in the *In re Welcome Group 2, LLC* case, Hilton has argued that section 365(c)(1) of the Bankruptcy Code prevents a chapter 11 debtor from assuming a franchise agreement. *See* Hilton Lift Stay Motion. at 8-11; Hilton Test Brief at 3-4. Hilton focuses on just five words in the introduction to section 365(c) to make this argument—that "the trustee may not assume or assign" an executory contract when the additional restrictions in section 365(c)(1) apply to argue that its franchise agreement with Hilliard cannot be assumed without its consent because it includes trademark provisions. *See* Hilton Test Brief at 2-6. Based on this, Hilton urges that this Court join the courts which interpret this language in section 365(c) as creating a "hypothetical test" of checking to see whether otherwise applicable law would prohibit the assignment of a contract outside of bankruptcy to then bar even the assumption by a debtor of an executory contract. *See id.*

#### 1. The Actual Test Is Better Supported by the Text of Section 365 Taken as a Whole

While Hilton spends much time claiming the hypothetical test is the proper textualist way to interpret section 365(c), it actually fails to follow the Supreme Court's directives regarding statutory construction. The Supreme Court has noted that "[s]tatutory construction [] is a holistic endeavor." *See United Savings Assn. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371 (1988). It is a "cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." *Hibbs v. Winn,* 542 U.S. 88, 101 (2004)

{907669-3} 7

(quoting *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581 (2004)). In doing this, the Supreme Court notes "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Kawaauhau v. Geiger,* 523 U.S. 57, 62 (1998) (quoting *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988)).

Hilton's arguments regarding the hypothetical test violate these rules in multiple ways. First, Hilton's arguments would make section 365(f)(1) of the Bankruptcy Code completely superfluous with respect to the invalidation of applicable laws restricting assignment because section 365(c) would allow for the enforcement of these provisions. Not surprisingly, Hilton never once cites section 365(f), let alone attempts to reconcile it with section 365(c). Instead, a court "must read sections 365(f) and (c) together." *In re Magness*, 972 F.2d 689, 695 (6th Cir. 1992). Courts that have adopted the alternative "actual" test of looking at whether an assignment is proposed for the executory contract have found that this test does a better job of reconciling the various subsections of section 365 of the Bankruptcy Code. *See, e.g., Institut Paster v. Cambridge Biotech Corp.*, 104 F.3d 489, 492-94 (1st Cir. 1997), (rejecting challenge to assumption of patent license based on a view that actual test better reconciled section 365(c) and (f)); *In re Mirant Corp.*, 440 F.3d 238, 248-51 (5th Cir. 2006) (finding that the reconciliation of section 365(e)(1)'s invalidation of ipso facto rules under applicable law with section 365(e)(2)'s exception for anti-assignment provisions was better performed by the actual test); *Summit*, 69 F.3d at 611-14 (finding that actual test does a better job of reconciling section 365(c) and (e)).

Second, Hilton's argument renders the inclusion of the words "or assign" in section 365(c)(1) superfluous. Under the hypothetical test, section 365(c) bars the assumption of an executory contract which violates the provisions on otherwise applicable law. Because section 365(f)(2) of the Bankruptcy Code requires an executory contract to be assumed before it is assigned, the "or assign" language in section 365(c)(1) becomes superfluous under the hypothetical test as the necessary assumption required prior to any assignment has already been banned. *See In re Cardinal Industries, Inc.*, 116 B.R. 964, 977 (Bankr. S.D. Ohio 1990). In contrast, the actual test gives these terms meaning by clarifying that there are situations where a

{907669-3}    8

debtor can assume, but not assign an executory contract. *See id.*

Third, Hilton's argument ignores that section 365(c) limits only the *trustee's* power to assume and assign and not that of the debtor in possession to assume. Interpreting section 365(c)'s limitations as only applying when a party other than the debtor seeks to assume, or the debtor seeks to assign to a third-party, better fits with the text and structure of section 365 of the Bankruptcy Code. *See In re Aerobox Composite Structures, LLC*, 373 B.R. 135, 141-42 (Bankr. D.N.M. 2007); *In re Adelphia Comm. Cor.*, 359 B.R. 65, 71-72 (Bankr. S.D.N.Y. 2007); *In re Footstar, Inc.,* 323 B.R. 566, 571-72 (Bankr. S.D.N.Y. 2005). This is because "nowhere does the Bankruptcy Code define 'trustee' as synonymous with 'debtor' or 'debtor in possession.'" *Footstar* 323 B.R. at 571. Instead, in sections 365(c), (e) and (f) "Congress has been quite careful in the use of the terms 'trustee" and "debtor" or 'debtor in possession' …." *Id.* This is because "the debtor and the trustee in a Chapter 11 case are entirely different parties." *Id.* Barring a debtor-in-possession from assuming a contract because of a non-bankruptcy law restriction on the assignment from the debtor to a third-party treats the debtor and the debtor-in-possession as completely discrete entities. This violates the Supreme Court's directive in *Bildisco* that for purposes of section 365 "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition …" *Bildisco*, 465 U.S. at 528; *see also Summit,* 69 F.3d at 614 (noting that under *Bildisco* the prepetition debtor and the debtor should not be treated like separate legal entities and deprived of the benefit of their bargain); *Texaco Inc. v. Louisiana Land and Exp. Co.*, 136 B.R. 658, 670 (Bankr. M.D. La. 1992) (noting that *West's* discussion of the hypothetical test "is directly contrary to the Supreme Court's view expressed in *Bildisco,* supra, that the debtor in possession is the same entity as the prepetition debtor).

Fourth, Hilton's argument assumes that the presence of "or" by itself in section 365(c)(1) of the Bankruptcy Code as a textual matter is dispositive because "or" is disjunctive despite the issues noted above. While it is true that "or" is often disjunctive, that is not always true. Indeed, the Supreme Court has noted "the word 'or' is often used as a careless substitute for the word 'and'; that is, it is often used in phrases where 'and' would express the thought with greater

clarity." *De Sylva v. Ballentine*, 251 U.S 570, 573 (1956). Thus, "[i]t is settled that 'or' may be read to mean 'and' when the context so indicates." *Willis v. U.S.*, 719 F.2d 608, 612 (2d Cir. 1989); *see also Holyoke Water Power Co. v. F.E.R.C.*, 799 F.2d 755, 761-62 (D.C. Cir. 1986) (collecting cases where "or" has been interpreted as "and"). "Sometimes the word 'or' creates a set of independent conditions. Sometimes it doesn't." *Patrick's Payroll Services, Inc. v. Comm. of Internal Revenue,* 848 Fed. Appx. 181, 183 (6th Cir. 2021) (citations omitted). Reading the word "or" as "and" in section 365(c)(1) makes more sense given the surrounding provisions in section 365 and the other arguments described above.

### 2. *The Legislative History Better Supports the Actual Test*

Given the substantial authority discussed above, the better textual analysis supports adopting the actual test. However, in the even the Court feels that the text is ambiguous, legislative history also supports this Court's adoption of the actual test over the hypothetical one. Hilton's brief never discusses the legislative history. In contrast, both the First Circuit in *Summit* and retired Bankruptcy Judge Sellers of this division of this district in her opinion in the *Cardinal Industries* analyze the legislative history. *See Summit*, 69 F.3d at 611, 613; *Cardinal Indus.*, 116 B.R. at 978-980.

In *Summit* the First Circuit noted that the contract counterparty arguing for the hypothetical test to be employed so as to allow termination of an executory contract under section 365(e) of the Bankruptcy Code "has not cited, not have we found, any legislative history supporting its suggested distinction between statutory and contractual *ipso facto* provisions." *Summit*, 69 F.3d at 611. Nor was the contract counterparty able to point to any favorable language regarding section 365(e)(2)'s invalidation of ipso facto clauses using very similar language to the language in section 365(c) that Hilton relies on here. *See id.* at 613.

Instead, both the First Circuit and Judge Sellers focused on the legislative history for the 1984 change to section 365(c) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("**BAFJA**"). "Section 362 of BAFJA amended 11 U.S.C. § 365(c)(1)(A) by substituting

{907669-3}                                                    10

the phrase "an entity other than debtor or the debtor in possession" for the words "the trustee." *Cardinal,* 116 B.R. at 979. The opinion in *Cardinal* goes on to note that "[t]his amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no petition had been filed because of the personal service nature of the contract." *See id.* (quoting H.R. Rep. No. 1195, 96th Cong. 2d Sess. § 27(b) (1980)).[3] "This comment clearly indicates that Congress did not intend § 365(c)(1) to preclude assumption of an otherwise nonassignable [] contract …." *Id.* Based on this, both the First Circuit in *Summit* and this Court in *Cardinal* found that legislative history showed the hypothetical test was not appropriate. *See Summit,* 69 F.3d at 613; *Cardinal,* 116 B.R. at 979; *see also Footstar,* 323 B.R. at 575 (finding the legislative history "confirm the conclusion" it reached that the hypothetical test did not apply).

### 3. Policy Concerns Also Support the Actual Test

Public policy concerns also support the usage of the actual test over the hypothetical test. The "policy of Chapter 11 is to permit successful rehabilitation of debtors …" *Bildisco*, 465 U.S. at 527. "Section 365 reflects a 'clear Congressional policy favoring assumption and assignment of executory contracts and leases." *In re Federated Department Stores, Inc.*, 128 B.R. 516, 519 (Bankr. S.D. Ohio 1990). As a piece in the *ABI Law Review* noted, "[a] debtor's ability to assume (*i.e.*, affirm) or reject (*i.e.,* disavow) executory contracts and unexpired leases in bankruptcy has long been recognized as one of the primary and essential tools available to a debtor under the Bankruptcy Code." Michelle Morgan Harner *et al.¸ Debtors Beware: The Expanding Universe of Non-Assumable/Non-Assignable Contracts in Bankruptcy*," 13 *Am. Bankr. Inst. L. Rev.* 187, 187 (2005).

It is undisputed that the Franchise Agreement is a valuable asset to the Debtors. A similar

---

[3] The opinion in *Cardinal* explains in some detail why this is the relevant legislative history for this session given the history of both BAFJA and the never passed "The Technical Amendments Act of 1980." *See Cardinal*, 116 B.R. at 978-79.

{907669-3}  11

situation is true for intellectual property in many other cases. Application of the hypothetical test results in a bankruptcy filing having a veto on the assumption of an executory contact involving intellectual property, which is a rapidly growing share of all contracts. This undermines the policy goals of chapter 11 and should and rejected. *See Texaco Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658, 671 (M.D. La. 1992) (finding that the hypothetical test "tends to defeat the basic bankruptcy purpose of enhancement of the bankruptcy estate for benefit of rehabilitation and the general creditors … It would allow one disgruntled creditor to frustrate payment of claims to other creditor or rehabilitation, contrary to the whole purpose of bankruptcy"); *In re Cumberland Corral, LLC*, No. 313-06325, 2014 WL 948473, at *9 (Bankr. M.D. Tenn. Mar. 11, 2014) ("To allow Golden Corral to block assumption of the Franchise Agreements because such agreements could not be assigned would allow Golden Corral a windfall while destroying the Debtor's chances at reorganization. Such an outcome would be contrary to the purposes of the Bankruptcy Code."); *Ohio Skill Games, Inc. v. Pace-O-Matic, Inc. (In re Ohio Skill Games, Inc.)*, No. 08-6049, 2010 WL 2710522, at *6 (Bankr. N.D. Ohio July 8, 2010) (noting that if the debtor could not assume the contract, it would award the creditor a windfall and the likelihood of a successful reorganization would plummet); *Matter of Fulton Air Service, Inc.*, 34 B.R. 568, 572 (Bankr. N.D. Ga. 1983) (noting that finding section 365(c) applicable would deprive the estate of its major assets); *see also Debtors Beware*, 13 Am. Bankr. Inst. L. Rev. at 240 ("If the ultimate goal of bankruptcy is the rehabilitation of a debtor's business, it makes little sense to prevent a debtor from assuming a valuable asset.").

### 4. *Hilton's Claims About the Weight of Other Authority Are Wrong*

Hilton points out that the "actual" test is the one adopted by the majority of the Courts of Appeal to try and make it sound like the great weight of authority is in support of the actual test. Hilton's counting of the Courts of Appeal focuses narrowly on just section 365(c) of the Bankruptcy Code and ignores that the interpretation of the actual and the hypothetical test also occurs with section 365(e) and section 365(f). When these subsections are added in, not only has

the First Circuit Court of Appeals adopted the actual test, *see Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 493 (1st Cir. 1997), but also the Fifth Circuit, *see In re Mirant Corp.*, 440 F.3d 238, 249 (5th Cir. 2006).[4] In addition, as noted by the Bankruptcy Court for the Northern District of Mississippi in *In re Jacobson* when it adopted the actual test in a case involving restaurant franchisees, "[t]he reasoning expressed in Collier, as well as the overwhelming majority of cases that have addressed this issue convinces this court that the 'hypothetical test' relied upon by Sonic is erroneous." 465 B.R. 102, 107 (Bankr. N.D. Miss. 2011); *see also Adelphia,* 359 B.R. at 72 (collecting cases and then concluding that "the great majority of the lower courts" have adopted the actual test). When you narrow the focus to lower courts in the Sixth Circuit, every Bankruptcy Court decision in Ohio has applied the actual test instead of the hypothetical. *See Ohio Skill*, 2010 WL 2710522 at *6-7 (permitting assumption of distribution agreement containing intellectual property license); *Federated,* 128 B.R. at 517-19 (finding anti-assignment clause in shopping center lease was invalidated by section 365(f)(1) and that the provision did not fall within the narrow exception contained in section 365(c) of the Bankruptcy Code); *Cardinal Industries*, 116 B.R. at 974-82 (finding that anti-assignment provisions in partnership agreements and the Revised Uniform Limited Partnership Act did not fall within the section 365(c)(1) exception and thus were invalidated by section 365(e) of the Bankruptcy Code). As for other bankruptcy courts within the Sixth Circuit, while Hilton has correctly pointed out that the Eastern District of Michigan adopted the "hypothetical" test in *In re Kazi Foods of Michigan, Inc.*, 473 B.R. 887, 890 (Bankr. E.D. Mich. 2011), a more recent opinion of the Bankruptcy Court for the Middle District of Tennessee has thought the decision of the First Circuit in *Institut Pasteur* and the Northern

---

[4] While the Sixth Circuit has not yet addressed this issue, in an opinion rejecting an attempt by a chapter 7 trustee's attempt to use section 365 to assume and assign a golf club membership which was not permitted under applicable nonbankruptcy law, it noted that "[i]n examining the trustee's right to assign through sale the full golf membership, we should make clear that we are not dealing with the right to *assume* the membership with all its baggage, thus permitting the debtor to pay golf." *In re Magness*, 972 F.2d 689, 694 (6th Cir. 1992). This focus in *Magness* on the difference between assignment and assumption for section 365 of the Bankruptcy Code is more compatible with the adoption of the actual test than the hypothetical test Hilton argues for.

{907669-3} 13

District of Ohio in *Ohio Skill Games* were more persuasive and adopted the actual test. *See Cumberland,* 2014 WL 948473, at *9.

Hilton's remaining argument that "commentators" prefer the hypothetical test is supported with just two citations — a quote from an article in an intellectual property journal and a single parenthetical about *Collier on Bankruptcy* that section 365(c) says an executory contract that cannot be assumed without permission of the contracting party. The first should be discounted as a commentary in a non-bankruptcy journal focused on creditors. The second is enormously misleading. In fact, *Collier on Bankruptcy* later on says the following about *In re West Electronics, Inc.* and the hypothetical test more generally:

> This approach is troubling as it may prevent a debtor in possession from being able to reorganize under circumstances that do not adversely affect the other party to the contract. The other party contracted for the debtor's performance and the debtor (in its capacity as debtor in possession) proposes to perform the contract after assumption. Of course, the other party is now dealing with a debtor who is in bankruptcy, but this is the same problem faced by other contracting parties. Section 365(e) prevents a party to a contract from terminating the contract merely because debtor has commenced a bankruptcy case, and section 365(c) should not be interpreted to provide a means around that provision or its underlying policy. The Court of Appeals for the First Circuit has reached this conclusion (the "actual test"). The Court of the Appeals for the Fifth Circuit has reached the same conclusion although with stronger language and reasoning, as have numerous other courts.

3 *Collier on Bankruptcy* ¶ 365.07[1][d] (Alan D. Resnick & Henry J. Sommer eds., 16th ed.). *Collier* is far from the only authority to criticize the hypothetical test. An article specific to the issue regarding hotel franchise agreements noted that in jurisdictions with the hypothetical test "is the bargaining strength that comes from the ability to freely block assumption or assignment of an agreement." Brian T. Harvey, *Assumption of Hotel Franchise Agreements in Bankruptcy: § 365 of the Bankruptcy Code Offers Significant Protection to Hospitality Franchisors that May Affect the Prospects for Successful Hotel Reorganizations*, 30 CAL. BANKR. J. 327, 338 (2010). Numerous articles in the Journal of the American Bankruptcy Institute have argued against the hypothetical

test. *See, e.g.,* Warren Agin, *Assuming Intellectual Property Licenses*, AM BANKR. INST. J., Feb. 2012, at 47 (noting actual test effectively stripped debtors of the ability to use IP); Saul Ehrepreis, *Trademark Licenses: Even in a Hypothetical or Actual World,* Footstar *Got it Right*, AM. BANKR. INST. J., June 2011, at 61 (arguing the *Footstar* approach is superior); Rudolph J. DI Massa Jr. and Matthew Hoffman, *Assumption and Assignment of IP License Agreements in Bankruptcy: Circuit Split Continues*, AM. BANKR. INST. J., March 2008, at 55 (calling the actual/*Footstar* approach the "better-reasoned" approach). Thus, the weight of commentary, if anything, weighs in favor of this Court adopting the actual test.

**IV.    Conclusion**

The application of the hypothetical test in this case would require Lancaster to negotiate to obtain the affirmative consent of Hilton. This would materially impact the Debtors' business plans and the structure of a Chapter 11 plan in these cases. Accordingly, this Court should issue a declaratory judgment regarding whether the hypothetical or actual test would govern a request by Lancaster to assume the Franchise Agreement. The actual or *Footstar* test does a better job of reconciling the statutory language of the various provisions of section 365 of the Bankruptcy Code, is better supported by the legislative history, and better fits the policy goals of chapter 11. This Court should follow the majority of bankruptcy courts and hold that the actual or *Footstar* test applies to the Franchise Agreement.

Dated: May 17, 2024　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ David A. Beck*
　　　　　　　　　　　　　　　　　　　　　　David A. Beck (0072868)
　　　　　　　　　　　　　　　　　　　　　　CARPENTER LIPPS LLP
　　　　　　　　　　　　　　　　　　　　　　280 Plaza, Suite 1300
　　　　　　　　　　　　　　　　　　　　　　280 North High Street
　　　　　　　　　　　　　　　　　　　　　　Columbus, Ohio 43215
　　　　　　　　　　　　　　　　　　　　　　Telephone: (614) 365-4100
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (614) 365-9145
　　　　　　　　　　　　　　　　　　　　　　E-mail: beck@carpenterlipps.com

　　　　　　　　　　　　　　　　　　　　　　*COUNSEL FOR S&G DEBTORS
　　　　　　　　　　　　　　　　　　　　　　INCLUDING PLAINTIFF LANCASTER
　　　　　　　　　　　　　　　　　　　　　　HOSPITALITY, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May 2024, the foregoing *Plaintiff Lancaster Hospitality, LLC's Motion for Partial Summary Judgment With Respect to its Claim for Declaratory Judgment that Section 365(C) of the Bankruptcy Code Uses an Actual Test for the Assumption of Executory Contracts* was filed with the Court and served by operation of the Court's electronic filing system on all parties receiving electronic notice in this case and by 1st class mail and email on the following:

>Daniel M. Eliades, Esq.
>Caitlin C. Conklin, Esq.
>K&L Gates LLP
>One Newark Center, 10th Floor
>1085 Raymond Boulevard
>Newark, New Jersey 07102
>Telephone: (973) 848-4018
>Facsimile: (973) 848-4001
>Email: daniel.eliades@klgates.com
>Email: caitlin.conklin@klgates.com

>*/s/ David A. Beck*
>One of the Attorneys for Plaintiff Lancaster Hospitality LLC